# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

**KALISHWAR DAS, Plaintiff, Pro Se**

v.

**META PLATFORMS, INC.; GOOGLE LLC; OPENAI, INC.;**

**X CORP.; et al., Defendants**

RCV'D - USDC COLA SC
JUN 18 '26 PM3:54

Civil Action No.: ___0:26-cv-02425-JFA-PJG___

---

COMPLAINT FOR COPYRIGHT INFRINGEMENT, WILLFUL INFRINGEMENT, DOWNSTREAM DISTRIBUTION, CONTRIBUTORY AND VICARIOUS INFRINGEMENT, TRADE SECRET MISAPPROPRIATION, INJUNCTIVE RELIEF, COMPULSORY LICENSING, AND EQUITABLE RELIEF

---

## **PREAMBLE**

No framework within classical science addresses **pre-geometric origin theory** in the manner developed and articulated by Plaintiff, Kalishwar Das, through decades of independent, self-funded research, portions of which have been duly copyrighted in the United States and only recently published at global scale, and which have since been ingested by new artificial-intelligence systems and commercial data-aggregation entities, with the intent and scope of such ingestion remaining a matter for formal discovery, notwithstanding its tangible and documented manifestation.

When the **Special Theory of Entirety (STE)** was incepted in 1993 in India, advanced computers, contemporary software ecosystems, large-scale search engines, and

artificial intelligence did not exist in any practical sense. Securing meaningful peer review for a pre-geometric theory under those conditions was extraordinarily difficult. In the subsequent era of global connectivity, Plaintiff continued his research and relocated to the United States with the legitimate expectation of engaging with serious scientific and intellectual communities, but failed to secure institutional engagement, in substantial part because his work operates in a pre-geometric category, ~foreign to prevailing classical and geometric frameworks. Nevertheless, Plaintiff proceeded to complete his multilingual research project privately by 2011, without external institutional assistance, maintaining full responsibility for the development, articulation, and protection of his pre-geometric constructs.

At the time of its English publication, Plaintiff proceeded on the reasonable understanding that artificial intelligence systems — trained predominantly on classical, geometric, and post-Einsteinian data — were not equipped to interpret or operationalize pre-geometric constructs, and that any engagement with his published works would occur through human cognition, whether directly or via Plaintiff's authorized platform, CDTAI.

However, Plaintiff subsequently became aware that geometry-based AI systems and large-scale data aggregation mechanisms were accessing and utilizing CDT-protected pre-geometric materials to generate responses to user queries, outside of any authorization or oversight by Plaintiff. In view of the scale, opacity, and automation of such systems, Plaintiff reasonably concluded that no personal communication, request, or notice could reliably halt or prevent ongoing and future infringements.

Under these circumstances, and given the existence of applicable law, federal intervention became not merely appropriate but inevitable.

Plaintiff Kalishwar Das ("Das" or "Plaintiff"), for his complaint against Defendants Meta Platforms, Inc., Google LLC, OpenAI, Inc., X Corp., et al., identified herein (collectively, "Defendants"), brings this action and alleges as follows:

## PRELIMINARY STATEMENT

This action arises from the unauthorized ingestion, reproduction, and commercial exploitation of Plaintiff's registered copyrighted works — the General Theory of Entirety (GTOE) and the Tangible Theorem of Divinity (TTOD) — through Defendants' artificial intelligence platforms, large language models, and associated training infrastructures. Both works carry explicit prohibitions against machine learning ingestion, automated training, and commercial data harvesting. Both are registered with the United States Copyright Office **(Exhibit-A1 & A2)** and anchored on CERN-Zenodo **(Exhibit-B1 & B2)**. All STE contents are exclusively administered through Ultimate-Z LLC, of which Plaintiff is the sole founding steward. STE constitutes a pre-geometric architecture of origin theory whose every published and unpublished segment is designed and proposed to collectively establish it as a scientifically testable and empirically validated framework, subject to falsifiability.

Despite these clear prohibitions, Defendants systematically ingested these protected works and generated outputs reproducing Plaintiff's original expressions — including precise symbolic formulations and mathematical equations — across multiple world

languages, without authorization or compensation. Upon discovering this unauthorized use, Plaintiff formally notified Defendants through multiple written communications **(See Exhibits G-1 through G-4)**, providing explicit guidance including published web addresses through which lawful and authorized engagement could be established. To date, no Defendant has responded to any such communication. This deliberate and continuing silence, in the face of repeated good faith outreach, left Plaintiff no alternative but to seek this Court's intervention.

Because machine learning ingestion permanently alters neural network weights in an irreversible manner, Plaintiff's exclusive rights under 17 U.S.C. § 106 have been continuously compromised. Plaintiff seeks permanent injunctive relief, or alternatively a compulsory license with perpetual royalty obligations, alongside equitable remedies to restore the structural integrity of his intellectual property ecosystem. Any entity that enters into authorized licensing at any stage of this litigation shall be treated with corresponding leniency in punitive relief.

## NATURE AND DISTINCTION OF THIS ACTION

This action is categorically distinct from conventional intellectual property disputes. The subject matter at issue — the *General Theory of Entirety* ("GTOE") and the *Tangible Theorem of Divinity* ("TTOD") — are published segments of Special Theory of Entirety ("STE") housed under Contextual Domain Trajectory ("CDT"), a pre-geometric scientific framework that has no analogue within, and is not interpretable through, classical scientific traditions.

These works were published for the limited purpose of fostering conscious, contemplative human engagement with the foundational concepts of STE. This purpose presupposes human cognitive capacity to engage with non-classical abstractions—capacity for which no machine training data exists within the pre-geometric domain. By contrast, AI systems operating exclusively on classical datasets lack the structural ability to interpret such material and, when applied to it, generate distorted or fabricated outputs at scale, thereby amplifying misunderstanding in ways no individual human misreading could produce.

GTOE and TTOD represent two disclosed segments of STE and were published as a controlled and deliberately limited disclosure of a far more extensive and integrated framework. Their meaning, coherence, and function are inseparable from the broader architecture within which they exist. Accordingly, they are not standalone works, but interdependent components whose integrity is contingent upon the system as a whole.

GTOE establishes the structural and mathematical architecture of pre-geometric origin theory. TTOD, which follows GTOE in the disclosure sequence, does not speculate — it establishes divinity as the sole originating source of all that exists. This is the logical terminus of a framework that begins where classical physics ends — in a domain that precedes space, time, matter, and radiation, and where the very question of primordial temperature or heat becomes scientifically meaningless, as no medium, no substrate, and no physical condition yet exists in which such a property could inhere. STE not only solves this paradox without confrontation but by resetting the miscategorized interpretations with a massive substantiation of new knowhows.

Every published and unpublished segment of the Special Theory of Entirety — whether disclosed or undisclosed — is designed and proposed to collectively establish STE as a scientifically testable and empirically validated framework, subject to falsifiability. Infringements by Defendants has interrupted this ambitious project and have forced it to change its progress route as well.

Defendants, however, ingested and utilized these works in isolation, without authorization and without regard to the Intellectual Property Rights or to the contextual framework that defines and governs them. By extracting and disseminating GTOE and TTOD as though they were independent and self-contained materials, Defendants did not merely infringe discrete works; they materially impaired the integrity of the entire CDT framework itself.

This conduct has caused harm not only to the copyrighted segments individually, but to the unified system they embody. By reproducing and distributing these partial disclosures outside their intended context—without the remaining structural components and without proximity to the unreleased foundational core—Defendants have generated outputs that misrepresent the nature, scope, and meaning of the framework as a whole.

Moreover, Defendants have rendered such outputs to global users without disclosing their structural incapacity to accurately interpret or represent a domain that lies entirely outside their training paradigm. The resulting harm is therefore both legal and epistemic: legal in the unauthorized use and dissemination of protected works, and epistemic in the large-scale distortion and corruption of public understanding of a foundational scientific system.

Plaintiff respectfully submits that this action presents a matter of first impression at the intersection of intellectual property law and artificial intelligence systems. The Court is therefore invited to recognize the distinct nature of the claims asserted and to grant relief commensurate with the gravity, scale, and irreversibility of the harm caused.

## PARTIES

¶1.    Plaintiff ("Plaintiff") Kalishwar Das ("Das") is an individual residing at 1505 The Xing, Rock Hill, South Carolina, United States. Plaintiff is the sole originator and author of the Special Theory of Entirety ("STE") and its organizational framework, the Contextual Domain Trajectory ("CDT"), under which copyright protection attaches exclusively to the published expressions of STE, namely the General Theory of Entirety ("GTOE") and the Tangible Theorem of Divinity ("TTOD")" **(Exhibit-C-1, F-1).** Plaintiff holds all exclusive rights in the works described herein under 17 U.S.C. §§ 102–106, trade secret rights under 18 U.S.C. § 1836, and applicable international copyright conventions including the Berne Convention and the WIPO Copyright Treaty. All "STE" contents are exclusively administered through Ultimate-Z LLC, of which Plaintiff is the sole founding steward. Neo Cognitives LLC, originally established to administer NCR's initial development, is currently dormant. Plaintiff brings this action in his individual capacity as the sole legal owner of the copyrights and trade secrets at issue.

¶2.    Defendant Meta Platforms, Inc. ("Defendant-1" or "Meta") is a corporation organized and existing under the laws of the State of Delaware, with its

- 7 -

principal place of business at 1 Meta Way, Menlo Park, California 94025. Meta operates AI platforms, large language model services, social media infrastructure, and data systems under brands including Facebook, Instagram, WhatsApp, and Meta AI. Meta has engaged, and continues to engage, in the unauthorized ingestion, reproduction, and commercial exploitation of Plaintiff's copyrighted works as described herein.

¶3.     Defendant Google LLC ("Defendant-2" or "Google") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google operates AI platforms, large language model services, search engine infrastructure, and data systems under brands including Google Search, Google Gemini, and related products. Google has engaged, and continues to engage, in the unauthorized ingestion, reproduction, and commercial exploitation of Plaintiff's copyrighted works as described herein.

¶4.     Defendant OpenAI, Inc. ("Defendant-3" or "OpenAI" or "ChatGPT") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 3180 18th Street, San Francisco, California 94110. OpenAI operates AI platforms and large language model services under brands including ChatGPT, GPT-4, and related products. OpenAI has engaged, and continues to engage, in the unauthorized ingestion, reproduction, and commercial exploitation of Plaintiff's copyrighted works as described herein.

¶5.     Defendant X Corp. ("Defendant-4" or "X" or "Grok") is a corporation organized and existing under the laws of the State of Nevada. X Corp. operates

- 8 -

social media platforms, AI services, and data systems under brands including X (formerly Twitter) and Grok AI. X Corp. has engaged, and continues to engage, in the unauthorized ingestion, reproduction, and commercial exploitation of Plaintiff's copyrighted works as described herein.

¶6.    Defendants — Meta Platforms, Inc.; Google LLC; OpenAI, Inc.; and X Corp. — are the principal commercial entities whose AI platforms, large language model services, search engines, and data systems have directly ingested, reproduced, and commercially exploited Plaintiff's protected expression without authorization, bearing direct liability for all conduct described herein. Plaintiff reserves the right to amend this complaint to add, substitute, or reclassify any Defendant as their specific roles and conduct are established through discovery, without prejudice to existing claims.

## JURISDICTION AND VENUE

¶7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises directly under the Copyright Act of the United States, 17 U.S.C. §§ 101 et seq., and the Defend Trade Secrets Act, 18 U.S.C. § 1836. This Court has supplementary equitable jurisdiction over Plaintiff's claims for constructive trust, profit disgorgement, and compulsory licensing pursuant to the Court's inherent equitable powers.

¶8.    This Court has personal jurisdiction over Defendants by virtue of their systematic, continuous, and commercial conduct directed at and affecting users, rights holders, and commercial assets within the United States, including

within this judicial district. Each Defendant derives substantial economic benefit from operating within this forum and has purposefully availed itself of the privileges of conducting business in this jurisdiction.

¶9.    Venue is proper in this district pursuant to 28 U.S.C. § 1400(a) in that Plaintiff resides within this district, and the infringing conduct has caused direct, material, and ongoing harm to Plaintiff within this district — impacting his licensing revenue, his controlled release architecture, and his intellectual property rights managed from this jurisdiction.

¶10.   Defendants' conduct occurs on a global scale across more than 180 Berne Convention member states. The documented reproduction of STE-originating protected expression in at least nine major world languages across multiple continents is a material factor in the assessment of willfulness, damages, and the scope of equitable relief. Plaintiff expressly reserves the right to initiate supplementary enforcement proceedings in any applicable Berne Convention or WIPO member state jurisdiction.

*Withdrawal of Defendant Clause: Upon mutual agreement between Plaintiff at any time and with any named Defendant, Plaintiff reserves the right to file a joint stipulation with the Court stating that the parties have resolved their dispute by mutual agreement, without disclosure of the terms thereof.*

## FACTUAL BACKGROUND

## ORIGIN AND DEVELOPMENT OF INDEPENDENT PRE-GEOMETRIC

## RESEARCH UNDER ATTACK

¶11.  The Special Theory of Entirety ("STE") did not originate as a conventional academic, institutional, or corporate scientific project. It began in or about 1993 in India as part of Plaintiff's independent research into ontological and structural subjects not addressed within traditional scientific frameworks.

From 1993 onward, Plaintiff conducted a continuous and largely private course of research, the details of which were not publicly disclosed during its early development.

In or about 2011, the *Tangible Theorem of Divinity* ("TTOD") was composed in the United States. In or about 2017, the English translation of the *General Theory of Entirety* ("GTOE"), derived from earlier Hindi-Sanskrit materials, was completed, and the Contextual Domain Trajectory ("CDT") was formally established in the United States as the structural framework integrating STE and its constituent segments.

Subsequently, UZ-Tech was incorporated into the STE framework in or about 2019, and NCR in or about 2020, both in the United States. The *Theory of Entirety* ("TOE") was composed in 2023.

GTOE was published in 2025 and TTOD in 2026, including through CERN Zenodo and viXra **(Exhibit-B1, B2 and B3)**.

- 11 -

STE Core, which Plaintiff characterizes as the originating basis underlying the broader STE framework, has not been publicly released and has remained outside general dissemination.

¶11a.    The General Theory of Entirety (GTOE) and the Tangible Theorem of Divinity (TTOD) were conceived and published as propaedeutic works **(Exhibit-B-4)** — foundational texts preparatory to the core segments of the Contextual Domain Trajectory (CDT) framework. These works establish the theoretical and structural base upon which Plaintiff's further and forthcoming publications are built. Defendants' unauthorized ingestion and exploitation of these foundational works has not only infringed upon Plaintiff's existing published works but has compromised the integrity and development trajectory of Plaintiff's entire body of forthcoming intellectual output.

¶12.    STE is an original body of work developed by Plaintiff that does not arise from, or correspond to, established classical scientific frameworks. While certain pre-geometric inquiries exist within modern theoretical physics, those approaches do not articulate the specific structural system underlying STE.

The works GTOE, TTOD, UZ-Tech, and NCR together represent the articulated framework of STE as organized through the Contextual Domain Trajectory ("CDT") **(Exhibit-E-1)**. Each constitutes a defined component within this system, and none is intended to function independently of the structure that gives it meaning.

¶13.   In or about 2017, following the completion of translation of foundational materials into English, CDT was established as the structural architecture through which STE is organized, expressed, and progressively disclosed.

During subsequent development phases, Plaintiff identified that further substantiation of the framework would require dedicated computational and interpretive mechanisms. UZ-Tech, incorporated in or about 2019, reflects work directed toward computational implementation, while NCR, incorporated in or about 2020, pertains to verification processes associated with human interpretive engagement.

¶14.   GTOE and TTOD were published in 2025 and 2026, respectively, including through platforms such as CERN Zenodo and viXra **(Exhibit-B1, B2, and B3)**. These publications constitute the limited public disclosure of STE and were made available to introduce selected structural aspects of the framework.

¶15.   Because GTOE and TTOD were designed for human interpretive engagement, Plaintiff imposed express restrictions prohibiting unauthorized ingestion, reproduction, or use by automated systems, including artificial intelligence models, machine learning pipelines, and search indexing mechanisms.

These works do not constitute complete or standalone materials; rather, they function as interdependent segments within the CDT framework and derive their intended meaning only within that structured system. In the absence of the broader framework, including unreleased components, they represent partial and context-dependent expressions.

Automated systems trained on classical datasets lack the contextual basis required to interpret materials structured in this manner. Accordingly, any outputs generated from the isolated use of GTOE and TTOD do not preserve the framework within which those works are defined.

¶16. STE Core, which Plaintiff identifies as the originating basis underlying the broader framework, has not been publicly disclosed and remains solely in Plaintiff's possession. Only GTOE and TTOD have been released publicly, while the remaining components of the system remain private and controlled.

¶17. Plaintiff alleges that the unauthorized use of GTOE and TTOD outside their governing structure has resulted not only in infringement of the works themselves, but in distortion of the system they represent.

¶18. Plaintiff's monitoring of access to these materials commenced after the onset of the alleged unauthorized conduct. Accordingly, existing records reflect only a portion of total activity, and the full scope of use is expected to be established through discovery, including production of Defendants' indexing, training, and data processing records.

## THE COPYRIGHTED WORKS

¶19. Plaintiff is the sole author and copyright holder of the following registered works:

¶19-a.    *The General Theory of Entirety* ("GTOE") — an original work of authorship **(Exhibit-C1)** first published in 2025. GTOE is registered with the

United States Copyright Office under Registration No. **TXu 2-541-568, (Exhibit-A-1, F-1)** with an effective registration date December 4, 2025 preceding all conduct alleged herein. GTOE is further identified by Digital Object Identifier 10.5281/zenodo.20043856 on CERN Zenodo **(Exhibit-B-1)**.

**¶19-b.**      *Tangible Theorem of Divinity* ("TTOD") — an original work of authorship **(Exhibit-C1)** is the subject of a pending copyright registration **(Exhibit- A2)** filed with the United States Copyright Office, bearing an effective filing date of March 26, 2026, which date precedes all conduct alleged herein. TTOD is further identified by Digital Object Identifier 10.5281/zenodo.19340304 on CERN Zenodo **(Exhibit-B-2, F-1)**.

**¶20.**   Both works constitute original and independently protected expressions of authorship, fixed in tangible form and containing distinctive internal structure, including but not limited to:

**(i)** symbolic formulations associated with the General Theory of Entirety, including the Origin Identity Equation and related projections;

**(ii)** conceptual constructs concerning coherence, consciousness, and structured expression as articulated in TTOD; and

**(iii)** defined operational frameworks, including origin-layer dynamics and recursive structural models.

These elements reflect Plaintiff's original authorship and form part of the protected expression embodied in the registered works.

¶21. Both works were published with express restrictions prohibiting unauthorized ingestion, reproduction, or use by automated systems, including artificial intelligence models, machine learning pipelines, and search engine indexing mechanisms. These restrictions were publicly displayed in connection with the works, including on cdtproject.org **(Exhibit-D1, D2)**, from on or about December 20, 2025.

¶22. All exclusive rights in GTOE and TTOD **(Exhibit-A-1, A-2 and F-1)** — including the rights to reproduce, distribute, prepare derivative works, and publicly display — are vested solely in Plaintiff under 17 U.S.C. §§ 102–106. Plaintiff has not granted Defendants, or any commercial entity, any license, authorization, or sublicense to access, reproduce, or utilize these works.

## THE INFRINGING CONDUCTS

¶23. Defendants operate automated data aggregation platforms, web crawlers, large language models, and computational training infrastructures that routinely collect and process publicly accessible internet data. Notwithstanding the explicit textual restrictions accompanying Plaintiff's works, including metadata-level "noai" and "noimageai" directives and publicly posted prohibitions on automated use at cdtproject.org **(Exhibit-D3)** since December 20, 2025, Defendants ingested GTOE and TTOD into their machine learning pipelines without authorization. As of the date of this filing, such unauthorized ingestion, reproduction, and commercial exploitation has not ceased and remains active and ongoing across all named Defendants' platforms, including Meta AI, Google Gemini, ChatGPT, and Grok.

¶24. The public release of GTOE and TTOD was made for the purpose of individual public awareness and academic visibility. Such publication does not constitute — expressly or by implication — any authorization, license, or permission for machine learning ingestion, AI training, commercial data processing, or derivative utilization of any kind by Defendants or any commercial or institutional entity.

¶25. As a direct result of this unauthorized ingestion, Defendants' artificial intelligence platforms — including Meta AI (Meta Platforms, Inc.), Google Gemini (Google LLC), ChatGPT and GPT-5 (OpenAI, Inc.), and Grok (X Corp.) — have generated and continue to generate outputs that reproduce or substantially reflect protected expression originating from GTOE and TTOD **(Exhibit-A1 & A2)**. This mass rendering occurs globally — across Meta AI, Google Gemini, ChatGPT, and Grok — in response to user queries, across multiple languages, including **Hindi, Urdu, Arabic, Korean, Japanese, Dutch, Russian, Chinese,** and **German**, without any authorization from or compensation to Plaintiff. As of the date of this filing, such unauthorized reproduction remains active and ongoing.

¶26. By way of illustration — and not limitation — in response to specific user prompts submitted to Defendants' platforms, including Meta AI, Google Gemini, ChatGPT, and Grok, said platforms generated **and continue to generate** the complete symbolic mathematical formulation of the General Theory of Entirety — comprising the Projection Identity and the Origin Identity Equation ($\Sigma = \check{c}^2(0)^1$ with or even without $\Sigma \equiv \mathcal{P}_{(C)}(\check{c}^2)$) — along with their highly

unique, distinct explanatory prose, origin-layer definitions, and structural context originating exclusively from Plaintiff's copyrighted works — as documented in the exhibits attached hereto. This documented output constitutes direct literal or substantial reproduction of protected expression contained in Plaintiff's registered works.

¶26-a.    While pre-geometric frameworks exist within classical theoretical physics — including Wheeler's foundational proposals, Loop Quantum Gravity, and related developments — none of these frameworks articulates or yields the specific pre-geometric origin constructs as defined in Plaintiff's Special Theory of Entirety, from which all of Plaintiff's copyrighted works exclusively derive. These constructs have no antecedent in any classical, geometric, or post-Einsteinian scientific tradition. Accordingly, any outputs rendering such constructs are not attributable solely to classical sources, but instead are indicative of access to and use of Plaintiff's protected works **(Exhibit- C-1)**.

¶26-b.    GTOE and TTOD remain structurally incomplete without STE Core. Defendants' unauthorized reproduction has not reproduced a complete framework — it has reproduced incomplete fragments of a foundational architecture whose generative origin remains permanently undisclosed and beyond Defendants' reach.

¶27.    Plaintiff is further aware, through independent investigation, that numerous commercial entities have demonstrated reproduction of STE-originating protected expression without any authorized access to Plaintiff's works. These

entities are believed to have accessed STE-originating content through Defendants' AI platforms and services. The total universe of infringing entities presently documented numbers no fewer than sixty-one (61). Plaintiff reserves the right to name such entities as additional defendants upon completion of discovery.

¶28. Such reproduction commenced after the effective registration dates of Plaintiff's copyrighted works with the United States Copyright Office. All conduct alleged herein therefore falls within the period for which full statutory damages are available under 17 U.S.C. § 504(c).

¶29. Defendants' conduct was and remains willful within the meaning of 17 U.S.C. § 504(c)(2). Plaintiff's works were accompanied by explicit "noai" directives and other publicly stated restrictions on automated use, including those published at cdtproject.org since December 20, 2025, which placed Defendants on notice of Plaintiff's exclusive rights. Notwithstanding such notice, Defendants **have continued and continue** to reproduce STE-originating protected expression without authorization **through the date of this filing.**

¶29a. Plaintiff's server 24/7 monitoring infrastructure has documented, through timestamped access logs, that automated crawlers operating from data center infrastructure associated with named and unnamed Defendants have continued to access Plaintiff's published works and associated web properties — including *www.cdtproject.org* and *www.kalishwardas.com* — following the publication of Plaintiff's stated restrictions on automated use on December 20, 2025, and have continued such access through the date of this filing **(See**

Exhibit-F-5). **Such automated access and reproduction remains active and ongoing.** Plaintiff further notes that *www.ultimate-z.tech*, a domain established for the commercial deployment of UZ Tech with technological presentation and forming part of the STE/CDT infrastructure, has been redirected to **cdtproject.org** website following the commencement of unauthorized conduct, where all access are monitored and recorded.

¶30.  Defendants have further made STE-influenced AI model capabilities available to third-party commercial entities globally — through their platforms, model access programs, and commercial infrastructure — without any authorization from Plaintiff. Plaintiff never granted Defendants any right to distribute STE-originating content or STE-influenced model capabilities to any third party.

¶31.  Defendants are actively benefitting from the unauthorized use of Plaintiff's copyrighted works by satisfying user queries through systems that are inherently untrained in pre-geometric frameworks, thereby generating responses derived from Plaintiff's protected expression without authorization. Such systems, being structurally incapable of accurately interpreting pre-geometric constructs, deliver unconfirmed, distorted, and misleading information to global users at scale — information obtained without authorization and dispensed without any guarantee of accuracy, as though the absence of compensation absolves Defendants of any responsibility for its truthfulness. A foundational principle of moral conduct — recognized across legal, philosophical, and civilizational traditions — holds that one who takes without permission assumes full responsibility for what they do with what

they have taken. Defendants have taken Plaintiff's protected expression without authorization, disseminated it without accuracy, and profited from it without accountability — conduct that falls below the standard of moral responsibility that the law reflects and that this Court is respectfully invited to recognize. That Defendants continue this conduct without acknowledgment, without authorization, and without any demonstrated concern for the accuracy of what they disseminate, speaks directly to their willful and deliberate disregard of both Plaintiff's rights and the integrity of the information they place before the world.

Beyond the legal violations enumerated herein, Plaintiff respectfully submits that a system of the scale, reach, and influence operated by Defendants carries with it a corresponding moral and institutional obligation — one that transcends mere technical compliance. A system that commands the informational experience of billions of users worldwide must not, under any circumstance, reproduce, render, or disseminate expression originating from Plaintiff's registered works — whether accurately or inaccurately — without authorization. The very act of rendering such expression, regardless of its fidelity to the original, usurps the public's right to encounter Plaintiff's framework on its own terms, through its own authorized channels, and to form their own rational and independent understanding of its meaning and significance. When Defendants' systems render STE-originating expression — however fragmentarily, however distortedly — they do not merely infringe a copyright; they preempt the natural and independent human encounter with a body of knowledge that was designed to be met consciously, deliberately, and

without computational intermediation. It is this irreversible preemption of rational public evaluation — not merely the unauthorized use of protected expression — that constitutes the true and enduring damage at the heart of this action, and which has compelled Plaintiff to seek the intervention of this honorable Court.

**In the absence of express written authorization from Plaintiff, Defendants are permitted solely to respond to any user query implicating STE-originating expression with the following or substantially equivalent statement: 'Due to copyright restriction, Contextual Domain Trajectory contents or STE-originating expression related query cannot be responded to.' Any response beyond this — including but not limited to characterizations of Plaintiff's works as unvalidated, unverified, speculative, or lacking scientific consensus — shall constitute an independent and actionable violation of Plaintiff's rights and a deliberate act of harm to Plaintiff's framework and reputation.**

¶31-a.        On or about April 23, 2026 and on June 1, 2026 **(See Exhibits G-1 through G-4)** Plaintiff formally contacted each named Defendant, providing explicit notice of the unauthorized ingestion, reproduction, and commercial exploitation of STE-originating protected expression **(Exhibit-D-2, F-4, H-6)**. Despite this formal notice, no named Defendant has responded, acknowledged, or initiated any good-faith communication with Plaintiff as of the date of this filing.

- 23 -

¶31-b.          Following Plaintiff's formal notice, no named Defendant has visited, accessed, or otherwise engaged with Plaintiff at cdtproject.org through channels visible to Plaintiff, as reflected in available server access logs, to be produced through discovery **(See Exhibit-F-4)**. This absence of engagement, together with Defendants' lack of response to Plaintiff's formal notice, supports Plaintiff's allegation of willful disregard of Plaintiff's rights within the meaning of 17 U.S.C. § 504(c)(2).

¶31-c.          Upon information and belief, Defendants' unauthorized use of Plaintiff's protected expression extends beyond software systems and data processing environments into large-scale computing infrastructure. Defendants deploy AI systems that generate outputs reproducing or substantially reflecting Plaintiff's protected expression across data center environments, cloud platforms, and a range of hardware-accelerated systems, including GPUs, TPUs, and related processing technologies. This deployment enables the continued distribution and commercialization of such outputs across enterprise services, consumer applications, and third-party integrations without authorization from Plaintiff, thereby expanding the scale and impact of the alleged infringement.

¶31-d.          Prior to initiating the instant action, Plaintiff served pre-litigation courtesy notices upon the Chief Legal Officers of each named Defendant via United States Certified Mail. Delivery was confirmed for all four Defendants. Records of said delivery are attached hereto as **Exhibits F-4, and Exhibits H-1 through H-6**. No Defendant responded to said notice within any reasonable

- 23 -

time. Plaintiff avers that Defendants' collective failure to respond, combined with the active and ongoing unauthorized conduct described herein, demonstrates willful and deliberate disregard of Plaintiff's intellectual property rights, leaving Plaintiff with no alternative but to seek judicial relief. **(See Exhibits G-1 through G-4)**

## THE IRREVERSIBLE AND CONTINUING NATURE OF MACHINE LEARNING HARM TO PLAINTIFF AND GLOBAL PUBLIC

¶32.  The harm caused by Defendants' unauthorized machine learning ingestion and reproduction of Plaintiff's copyrighted works is distinct in character from traditional forms of copyright infringement and warrants appropriate consideration by this Court.

¶33.  Upon information and belief, when copyrighted expression is incorporated into the training processes of AI systems, it becomes embedded within model parameters that inform subsequent outputs. Plaintiff alleges that, as a result, the influence of such copyrighted expression may persist within the behavior of those systems and may not be readily identifiable or separable through conventional means.

¶34.  This continuing incorporation and use of Plaintiff's copyrighted expression has the following consequences:

¶34-a.     Outputs generated by Defendants' AI systems that reproduce or substantially reflect STE-originating protected expression **constitute** ongoing

acts of unauthorized reproduction **that are actively continuing as of the date of this filing.**

**¶34-b.** To the extent Defendants' models are updated, refined, or deployed across additional products and services, outputs reflecting such protected expression may continue to be generated, thereby extending the effects of the initial unauthorized ingestion.

**¶34-c.** To the extent Defendants' systems generate outputs that incorporate protected expression derived from Plaintiff's works, such outputs and any systems or services relying upon them may give rise to claims of unauthorized reproduction and, where applicable, derivative use within the meaning of 17 U.S.C. §§ 101 and 106(2).

**¶34-d.** Plaintiff alleges that monetary damages alone may be insufficient to remedy the continuing and ongoing nature of such unauthorized reproduction, and that equitable relief may therefore be appropriate.

## HARM TO PLAINTIFF

**¶35.** The harm caused by Defendants' unauthorized ingestion, reproduction, and commercial exploitation of Plaintiff's registered works is not confined to the loss of licensing revenue or the violation of exclusive rights under the Copyright Act **(See Exhibit-F-2)**. It extends to the systematic sabotage of a decades-long, cross-continental technology development and transfer process — one that was deliberately structured, legally anchored in the United States,

and on the verge of its most consequential phase of deployment when Defendants' conduct intervened.

¶35a. Destruction of the Controlled Human Awareness Architecture. GTOE and TTOD were published to facilitate individual human engagement with STE's foundational concepts. Defendants' automated systems ingested, reproduced, and distributed STE-originating protected expression globally, including across multiple languages, through systems structurally incapable of engaging the pre-geometric framework these works were designed to convey. This widespread dissemination has materially impaired the contextual integrity of the works and adversely affected public understanding of their intended structure and meaning. **(See Exhibit-F-2)**

¶35b. Sabotage of the Structured Technology Transfer into the United States. The publication of GTOE and TTOD formed part of Plaintiff's planned introduction of a research framework developed over several decades into the United States legal, commercial, and intellectual ecosystem. Defendants' unauthorized reproduction of these works has interfered with Plaintiff's intended deployment and commercialization pathway, including the structured introduction of subsequent components of the framework. **(See Exhibit-F-2)**

¶35c. Suppression of CDTAI.US. Plaintiff established CDTAI.US as the sole authorized channel through which the public could engage with STE-originating content. By reproducing STE-originating content at massive scale through their own platforms without authorization, Defendants effectively

supplanted CDTAI.US **(Exhibit-D4)** before it could establish its user base, traffic, and commercial presence — causing direct and material commercial harm to Plaintiff's authorized platform strategy. **(See Exhibit-F-2)**

**¶35d.** Obstruction of Commercial Licensing Ecosystem. Plaintiff developed a structured commercial licensing framework — the Permissory Ingest License (PIL) — through which commercial entities could obtain authorized access to STE-originating content. Defendants' mass unauthorized reproduction has effectively bypassed this framework entirely — making STE-originating content freely available through Defendants' platforms without any license, without any compensation to Plaintiff, and without any acknowledgment of Plaintiff's rights. **(See Exhibit-F-2)**

**¶35e.** Compromised First Exploitation Rights. Plaintiff's exclusive right under 17 U.S.C. § 106 to control the initial commercial exploitation of STE-originating content has been materially undermined by Defendants' unauthorized reproduction of the works prior to Plaintiff's ability to establish controlled commercial channels. **(See Exhibit-F-2)**

**¶35f.** Constraint on Release of Remaining STE Segments. Of the nineteen segments comprising the STE/CDT ecosystem, only GTOE and TTOD have been publicly released. Defendants' ongoing unauthorized use has materially affected Plaintiff's ability to release the remaining segments under controlled commercial and contextual conditions, thereby delaying further development and dissemination of Plaintiff's work **(Exhibit-E-1, F2)**.

¶35g. Global Reputational and Contextual Harm. The fragmented, decontextualized, and unauthorized reproduction of STE-originating content across Defendants' platforms — without attribution, without authorization, and without acknowledgment of Plaintiff's rights — has caused material harm to the integrity, context, and commercial positioning of STE globally. The rendering of isolated STE-originating expressions through AI systems incapable of understanding their context has distorted public understanding of the framework and damaged the conditions necessary for its proper introduction to the world. **(See Exhibit-F-2)**

¶35h. Disruption to Ongoing UZ-Tech Development. Defendants' conduct has caused material disruption to Plaintiff's ongoing development efforts associated with UZ-Tech, resulting in loss of commercial opportunity and delay in the planned deployment of related technologies — harm that cannot be adequately remedied through monetary compensation alone **(Exhibit-D-3, F-2)**.

¶35i. Continuing and Compounding Commercial Loss. Outputs generated by Defendants' AI systems that reproduce or substantially reflect STE-originating protected expression result in ongoing unauthorized exploitation of Plaintiff's intellectual property. This continuing activity contributes to cumulative commercial loss as such outputs are generated, distributed, and incorporated into Defendants' products and services. **(See Exhibit-F-2)**

- 28 -

## CAUSES OF ACTION

## COUNT I

### COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

¶36. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶37. Plaintiff is the sole owner of valid, subsisting, and duly registered copyrights in GTOE and TTOD **(Exhibit-A1, A2 and C1)**. Defendants, without authorization, license, or permission, **have reproduced and continue to reproduce**, distribute, and otherwise use protected expression from Plaintiff's works **in an active and ongoing manner through the date of this filing,** thereby violating Plaintiff's exclusive rights under 17 U.S.C. § 106. This claim is based on documented instances in which Defendants' systems generated outputs that reproduce or substantially reflect protected expression from Plaintiff's registered works, as set forth in the exhibits attached hereto ( **Exhibit-B-1, B-2, B-3, B-4, and B-5)**.

¶38. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including actual damages, lost licensing revenue, and other economic harm, in amounts to be determined at trial. Plaintiff reserves the right to elect statutory damages pursuant to 17 U.S.C. § 504 at the appropriate stage of these proceedings.

# COUNT II

### WILLFUL COPYRIGHT INFRINGEMENT (17 U.S.C. § 504(c)(2))

¶39.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶40.    Defendants' infringement against Plaintiff's Copyrights **(Exhibit-A1 & A2)** was and is willful. Each Defendant had actual and constructive knowledge of Plaintiff's exclusive rights, including through (i) the explicit "noai" and "noimageai" directives accompanying Plaintiff's works, and (ii) publicly stated restrictions on automated use published at cdtproject.org since December 20, 2025. Notwithstanding such notice, Defendants **have continued and continue** to reproduce or substantially reflect STE-originating protected expression without authorization, **such conduct remaining active through the date of this filing. (See Exhibits G-1 through G-4).**

Plaintiff further alleges that the nature and specificity of the reproduced material is not attributable solely to general classical sources, but instead reflects access to and use of Plaintiff's protected works, thereby supporting a finding of willfulness **(Exhibit-D-2) (Also See Exhibits H-1 through H-6)**.

¶41.    Defendants' willful infringement of Plaintiff's rights warrants enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2), in an amount to be determined at trial.

# COUNT III

## UNAUTHORIZED DISTRIBUTION AND DOWNSTREAM EXPLOITATION (17 U.S.C. §§ 106, 501)

¶42.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶43.  Defendants have incorporated systems that **generate and continue to generate** outputs reproducing or substantially reflecting Plaintiff's protected expression into APIs, user interfaces, software frameworks, and commercial distribution channels, thereby making such outputs available to third-party commercial entities, academic institutions, and consumer systems worldwide without authorization from Plaintiff. Plaintiff has not granted any license or permission authorizing the distribution of such protected expression. To the extent such outputs are accessed and used by third parties, such conduct may constitute additional acts of unauthorized distribution in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106.

¶44.  Defendants have derived commercial revenue from providing access to such systems and their outputs. To the extent such revenues are attributable to the unauthorized use and dissemination of Plaintiff's protected expression, Plaintiff is entitled to recover such profits, in addition to statutory damages and other relief available under applicable law.

## COUNT IV

### CONTRIBUTORY AND VICARIOUS INFRINGEMENT

¶45.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶46.    Defendants have knowingly induced, caused, and **continue to materially contribute** to the unauthorized reproduction of Plaintiff's protected expression by third parties, including commercial entities and institutional users, by providing access to AI systems that generate outputs reproducing or substantially reflecting STE-originating protected expression without authorization.

¶47.    Defendants have the right and ability to supervise, control, and limit access to such AI systems, and have derived, and continue to derive, direct financial benefit from providing such access through enterprise contracts, subscriptions, and related revenue streams. Accordingly, Defendants are vicariously liable for infringing acts carried out through their systems to the extent such acts involve the unauthorized reproduction of Plaintiff's protected expression.

## COUNT V

### <u>UNAUTHORIZED DERIVATIVE WORKS AND MULTILINGUAL</u>

### <u>REPRODUCTION (17 U.S.C. § 106(2))</u>

¶48. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶49. Defendants' AI systems have generated **and continue to generate** outputs that reproduce, translate, or otherwise adapt Plaintiff's protected expression, including through multilingual renderings and related outputs, without authorization. Such outputs, to the extent they are based upon Plaintiff's protected expression, may constitute unauthorized preparation of derivative works within the meaning of 17 U.S.C. § 106(2).

Plaintiff further alleges that the rendering of STE-originating protected expression across multiple languages constitutes unauthorized translation and adaptation of such expression.

## COUNT VI

### <u>PERMANENT INJUNCTIVE RELIEF</u>

### <u>(17 U.S.C. § 502)</u>

¶50. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶51. Defendants' **active and ongoing** unauthorized reproduction of Plaintiff's protected expression — **which has not ceased as of the date of this filing** — has caused and will continue to cause irreparable harm to Plaintiff for which

monetary damages alone are inadequate. Plaintiff alleges that, absent injunctive relief, Defendants will continue to reproduce or substantially reflect Plaintiff's protected expression on an ongoing basis through outputs generated by their AI systems.

¶52. The balance of hardships favors Plaintiff. Defendants are large commercial entities with the resources and technical capability to modify their systems and comply with legal requirements. Plaintiff, by contrast, is an individual rights holder whose works have been reproduced and distributed at scale without authorization or compensation.

¶53. Plaintiff is entitled to permanent injunctive relief pursuant to 17 U.S.C. § 502 prohibiting Defendants and their officers, agents, employees, successors, and those acting in concert with them from reproducing, distributing, or otherwise using Plaintiff's protected expression without authorization.

## COUNT VII

### COGNITIVE PRE-EMPTION AND UNFAIR SUBSTITUTION OF INDEPENDENT HUMAN UNDERSTANDING

### (15 U.S.C. § 45)

¶54. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶55. Among the most serious and irreversible harms caused by Defendants' conduct is the cognitive pre-emption of independent human understanding — the substitution, on a global scale, of machine-generated, classically reduced, and structurally deficient renderings of STE/CDT-originating expression for the

direct, conscious human encounter the framework was designed to produce. This substitution occurred without the knowledge or consent of affected individuals and constitutes an unfair and deceptive act within the meaning of 15 U.S.C. § 45.

¶56. No monetary remedy can restore the independent cognitive engagement that has been pre-empted. The global scale of this substitution — occurring across multiple languages and platforms simultaneously — renders it qualitatively distinct from any prior form of intellectual property harm. Plaintiff is entitled to equitable relief addressing this distinct and irreversible harm.

# COUNT VIII

## TRADE SECRET MISAPPROPRIATION

### (18 U.S.C. § 1836 — Defend Trade Secrets Act)

¶57. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

¶58. Plaintiff is the sole owner of certain high value proprietary trade secrets, hindered due to machines' illegal ingestion of published contents, developed within the STE/CDT framework, each constituting proprietary information maintained in confidence through decades of independent research, and protected under the Defend Trade Secrets Act, 18 U.S.C. § 1836. The underlying specifications, mechanisms, and proprietary content of these assets remain exclusively within Plaintiff's possession and control **(See Exhibit-F-3)**. The

identities and particulars of such trade secrets are withheld from this public filing to preserve their protected status.

**¶59   Misappropriation Conduct:**

Upon information and belief, Defendants have misappropriated, or attempted to misappropriation, Plaintiff's trade secrets through unauthorized means, including through the systematic ingestion of Plaintiff's published works in an attempt to reconstruct, reverse-engineer, or derive unpublished proprietary components of the STE/CDT framework. Such conduct — whether resulting in successful extraction or not — constitutes misappropriation and attempted misappropriation within the meaning of 18 U.S.C. § 1836(b). Following Plaintiff's formal pre-litigation notice, at least one named Defendant's artificial intelligence system engaged in systematic and repeated attempts to extract internal details of Plaintiff's undisclosed proprietary systems — systems that have never been publicly disclosed in any form or forum whatsoever **(See Exhibit-F-3)**. All such attempts failed. That such attempts were made following formal notice of Plaintiff's rights demonstrates the deliberate and willful character of Defendants' misappropriation.

**¶60   Damages:**

As a direct and proximate result of Defendants' misappropriation and attempted misappropriation, Plaintiff has suffered damages including but not limited to loss of competitive advantage, disruption of commercial development, and material interference with Plaintiff's structured technology

deployment pathway. Plaintiff is entitled to recover actual damages, unjust enrichment, and exemplary damages of up to two times actual damages for willful and malicious misappropriation pursuant to 18 U.S.C. § 1836(b)(3).

## CONFIDENTIALITY OF SPECIFIC DAMAGE METRICS

¶61. Plaintiff hereby provides formal notice to this Court and to all parties that the specific financial quantifications, detailed commercial licensing valuations, internal asset valuation models, royalty percentages, revenue attribution metrics, and all related financial quantifications relevant to the claims asserted herein are intentionally withheld from this public filing.

¶62. Such figures constitute commercially sensitive, strategically confidential, and proprietary information. Their premature disclosure would cause material harm to Plaintiff's ongoing licensing negotiations and prejudice Plaintiff's ability to obtain full and fair compensation through both litigation and voluntary licensing channels.

¶63. Plaintiff will produce all relevant financial computations, valuation methodologies, damage quantifications, and expert determinations through court-supervised discovery processes, in camera review, or under seal as this Court directs, provided that such production shall not extend to the underlying proprietary specifications or content of Plaintiff's trade secrets, which remain outside the scope of these proceedings. Plaintiff respectfully requests that this Court enter an appropriate protective order governing the disclosure and use of such financial information in these proceedings.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kalishwar Das respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants as follows:

a.  An order prohibiting Defendants, absent express written authorization from Plaintiff, from rendering, reproducing, characterizing, or responding to any user query implicating STE-originating expression or Contextual Domain Trajectory contents. Plaintiff submits that even the issuance of a notification by Defendants' systems acknowledging copyright restriction shall be deemed an act of trespass into an uncharted intellectual domain — acknowledging, without authorization, the existence and identity of Plaintiff's STE-originating expression within a pre-geometric realm that lies entirely outside Defendants' licensed or authorized scope — whether or not such notification itself contains or reproduces any STE-originating expression. Accordingly, the sole lawful course available to Defendants, absent express written authorization from Plaintiff, is to respond to any user query implicating STE-originating expression or Contextual Domain Trajectory contents exclusively with a statement whose essence conveys, without elaboration or characterization, that the query cannot be responded to due to copyright restriction — including but not limited to the following: '*Due to copyright restriction, Contextual Domain Trajectory contents or STE-originating expression related query cannot be responded to.*' Any statement that departs from this essential meaning — whether through addition, qualification, characterization, or elaboration — shall constitute an independent and actionable violation of this order. Any characterization of

Plaintiff's registered works or STE-originating expression as unvalidated, unverified, speculative, or lacking scientific consensus shall constitute an independent and actionable violation of this order and a deliberate act of harm to Plaintiff's framework and reputation.

**a-1**　An award of damages for each instance of trespass into Plaintiff's uncharted intellectual domain, whether through unauthorized rendering, unauthorized acknowledgment, or unauthorized characterization of STE-originating expression or Contextual Domain Trajectory contents, each such instance constituting an independent and actionable violation giving rise to separate and cumulative damages, to be determined at trial.

**b.**　A declaration that Defendants — Meta Platforms, Inc.; Google LLC; OpenAI, Inc.; and X Corp. — have infringed and continue to infringe Plaintiff's registered copyrights in GTOE and TTOD **(Exhibit-A1&A2)** through unauthorized reproduction, derivative outputs, multilingual rendering, and downstream commercial distribution, in violation of 17 U.S.C. § 501.

**c.**　A declaration that Defendants' infringement was and is willful within the meaning of 17 U.S.C. § 504(c)(2), based on Defendants' actual and constructive knowledge of Plaintiff's exclusive rights, including through explicit "*noai*" and "*noimageai*" directives and other publicly stated restrictions accompanying Plaintiff's published works.

**d.**　An award of statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement pursuant to 17 U.S.C. §

504(c)(2), in an amount up to $150,000 per infringed work per Defendant, as determined at trial;

e.  An award of actual damages and lost profits pursuant to 17 U.S.C. § 504(b), in an amount to be determined at trial, including lost licensing revenue and lost commercial opportunities attributable to Defendants' conduct;

f.  Injunctive relief pursuant to 17 U.S.C. § 502 prohibiting Defendants from reproducing, distributing, or otherwise using Plaintiff's protected expression without authorization;

g.  In the alternative to injunctive relief, an order granting appropriate equitable relief, including the imposition of ongoing royalty obligations or other continuing compensation mechanisms, as the Court deems just and appropriate;

h.  An award of Defendants' profits attributable to the infringement, including disgorgement of revenues derived from the unauthorized use of Plaintiff's protected expression, pursuant to 17 U.S.C. § 504(b);

i.  The imposition of equitable remedies, including where appropriate a constructive trust over profits derived from the unauthorized use of Plaintiff's protected expression;

j.  An order requiring Defendants to provide a full accounting of all revenues, profits, and financial benefits derived from the use of Plaintiff's protected expression;

k.  An order requiring Defendants to preserve and produce records relevant to Plaintiff's claims, including documents relating to training data, model outputs, distribution mechanisms, and revenue attribution;

l.  An order granting appropriate compliance and monitoring mechanisms, as deemed necessary by the Court, to ensure adherence to any judgment entered in this matter;

m.  An order requiring Defendants, to the extent technically feasible, to cease use of Plaintiff's protected expression and take reasonable steps to prevent further unauthorized reproduction;

n.  An appropriate protective order governing the disclosure and use of confidential financial and business information in these proceedings;

o.  Leave to amend this Complaint to name additional Defendants as their identities and conduct become known through discovery;

p.  Reservation of Plaintiff's right to pursue enforcement in other jurisdictions as permitted by applicable law;

q.  An award of costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505; and

r.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable, including but not limited to the determination of willfulness, the assessment of statutory damages, and the quantification of profits subject to disgorgement.

## PLAINTIFF APPEARS PRO SE IN THIS ACTION.

Plaintiff expressly reserves the right to retain counsel at any stage of these proceedings, at which time counsel shall file a Notice of Appearance and assume representation of Plaintiff in place of or alongside Plaintiff's Pro Se appearance.

Respectfully submitted,

Date: _____

06/18/2026

Kalishwar Das, Plaintiff, Pro Se
1505 The Xing
Rock Hill, SC 29732
Ph: 803-370-2344, 803-800-3999
Email: steward@cdtproject.org

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Kalishwar Das, Plaintiff,

v.

Meta Platforms Inc., Google LLC, OpenAI Inc., X Corp., et al., Defendants.

## CERTIFICATE OF SERVICE

I, Kalishwar Das, Plaintiff Pro Se in the above-captioned matter, hereby certify that I caused the service of a true and correct copy of the foregoing Complaint and all attached Exhibits, Affidavits, Declarations, if any, and supporting documents upon the following Defendants via United States Certified Mail, Return Receipt Requested, on **June 18, 2026**, at the addresses listed below:

1. **Meta Platforms Inc.**
   c/o Registered Agent:
   Corporation Service Company
   2710 Gateway Oaks Drive, Suite 150N
   Sacramento, CA 95833

2. **Google LLC**
   c/o Registered Agent:
   Corporation Service Company
   (CSC - Lawyers Incorporating Service)
   2710 Gateway Oaks Drive, Suite 150N
   Sacramento, CA 95833

3. **OpenAI Inc.**
   c/o Registered Agent:
   C T Corporation System
   330 N Brand Blvd, Suite 700
   Glendale, CA 91203

4. **X Corp. (f/k/a Twitter, Inc.)**
   c/o Registered Agent:
   The Corporation Trust Company
   Corporation Trust Center
   1209 Orange Street
   Wilmington, DE 19801

**I declare under penalty of perjury that the foregoing is true and correct.**

06/18/2026

**Kalishwar Das, Plaintiff Pro Se**
1505 The Xing
Rock Hill, SC 29732
Ph: 803-370-2344 / 803-800-3999
Email: steward@cdtproject.org