RECEIVED
USDC CLERK, COLUMBIA, SC

2026 JUL. 17  PM 12: 49

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

**KALISHWAR DAS, Plaintiff, Pro Se,**

v.

**META PLATFORMS, INC.; GOOGLE LLC; OPENAI, INC.;
X CORP.; and DOES 1–50, Defendants.**

Civil Action No. **0:26-cv-02425-SAL-PJG**

---

FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, WILLFUL

COPYRIGHT INFRINGEMENT, UNAUTHORIZED DISTRIBUTION AND

DOWNSTREAM EXPLOITATION, CONTRIBUTORY AND VICARIOUS

INFRINGEMENT, AND UNAUTHORIZED DERIVATIVE WORKS AND

MULTILINGUAL REPRODUCTION

**(Filed as a Matter of Course Pursuant to Fed. R. Civ. P. 15(a)(1))**

**JURY TRIAL DEMANDED**

---

Plaintiff Kalishwar Das ("Plaintiff" or "Das"), appearing pro se, alleges as follows:

**PRELIMINARY STATEMENT**

1. This action arises from the unauthorized ingestion, reproduction, distribution, public display, and commercial exploitation of Plaintiff's protected expression through Defendants' artificial-intelligence platforms, large language models, search systems, and associated training, retrieval, and output infrastructures.

2. Defendants used Plaintiff's protected expression without license or authorization and caused that expression, or substantially similar renderings of it, to be generated and disseminated to

users at scale through automated systems designed, trained, deployed, controlled, and monetized by Defendants.

3. The primary question presented is not whether Plaintiff's protected expression was rendered, but who rendered it, through what systems, and with what legal authority. Artificial-intelligence systems are not independent legal persons and possess no right to acquire, reproduce, transform, distribute, or commercially exploit Plaintiff's works at no cost and at public scale. Legal responsibility for such conduct rests with the Defendant entities that designed, trained, deployed, controlled, and profited from those systems.

4. Plaintiff's work *The General Theory of Entirety* ("GTOE") is the subject of an issued United States copyright registration, Registration No. TXu 2-541-568, with an effective registration date of December 4, 2025 **(Exhibits A-1, F-1)**. Plaintiff's work *Tangible Theorem of Divinity* ("TTOD") is the subject of a pending copyright application bearing an effective filing date of March 26, 2026 **(Exhibit A-2)**.

5. The copyright claims asserted in this First Amended Complaint are based solely on GTOE. Plaintiff expressly reserves the right to further amend this pleading to assert TTOD-based copyright claims upon issuance of the registration certificate for TTOD, or as otherwise permitted by law.

6. This First Amended Complaint is filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). Exhibits A-1 through H-6, filed with the original Complaint (ECF No. 1-1), are incorporated herein by reference and are relied upon as exhibits to this First Amended Complaint.

## NATURE OF THE ACTION

7. Plaintiff is the sole originator of an integrated body of research and expression comprising the Special Theory of Entirety ("STE"), organized and progressively disclosed through the Contextual Domain Trajectory ("CDT") framework. GTOE and TTOD are the only publicly released segments

- 2 -

of that framework and were published as propaedeutic works intended for human reading, academic visibility, and conscious interpretive engagement **(Exhibit B-4)**.

**8.** Both works were published subject to express restrictions prohibiting machine-learning ingestion, artificial-intelligence training, automated extraction, and commercial exploitation **(Exhibits D-1, D-2, D-3)**.

**9.** Defendants nevertheless ingested and used the published materials in artificial-intelligence systems that generated outputs reproducing or substantially reflecting Plaintiff's protected expression, and thereby interfered with Plaintiff's licensing program, authorized public channels, planned commercialization pathway, and control over the first exploitation of the works.

**10.** Defendants' conduct has materially hindered Plaintiff's ability to proceed with the planned transfer, controlled deployment, and commercialization of the remaining CDT segments in the United States, causing financial constraint and forcing the postponement and restructuring of planned disclosures and business activity **(Exhibit F-2)**.

## PARTIES

**11.** Plaintiff Kalishwar Das is an individual residing in Rock Hill, South Carolina, within this District. Plaintiff is the sole originator of the Special Theory of Entirety and of the Contextual Domain Trajectory framework, developed through more than three decades of independent research; the sole author of GTOE and TTOD; and the sole owner of the copyrights, and associated rights asserted herein **(Exhibits C-1, F-1)**. All STE contents are exclusively administered through Ultimate-Z LLC, of which Plaintiff is the sole founding steward. Plaintiff brings this action in his individual capacity as the sole legal owner of the rights at issue.

**12.** Defendant Meta Platforms, Inc. ("Meta") is a corporation organized under the laws of Delaware with its principal place of business at 1 Meta Way, Menlo Park, California 94025. Meta

operates artificial-intelligence platforms, large-language-model services, social-media infrastructure, and data systems under brands including Facebook, Instagram, WhatsApp, and Meta AI.

13. Defendant Google LLC ("Google") is a limited liability company organized under the laws of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google operates artificial-intelligence platforms, large-language-model services, search-engine infrastructure, and data systems under brands including Google Search and Google Gemini.

14. Defendant OpenAI, Inc. ("OpenAI") is a corporation organized under the laws of Delaware with its principal place of business at 3180 18th Street, San Francisco, California 94110. OpenAI operates artificial-intelligence platforms and large-language-model services under brands including ChatGPT and related GPT-branded models.

15. Defendant X Corp. ("X Corp.") is a corporation organized under the laws of Nevada. X Corp. operates social-media platforms, artificial-intelligence services, and data systems under brands including X (formerly Twitter) and Grok.

16. Plaintiff is presently unaware of the true names and capacities of Does 1–50, whether persons, entities, affiliates, contractors, downstream commercial recipients, model distributors, or other actors who participated in the conduct alleged herein. Plaintiff will seek leave to amend this Complaint to identify such parties when their identities and roles are ascertained through discovery.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the Copyright Act, 17 U.S.C. §§ 101 et seq..

18. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1338(a) because Plaintiff asserts claims arising under an Act of Congress relating to copyrights, over which the district courts have original and exclusive jurisdiction.

19. The injunctive, monetary, and equitable relief sought herein — including disgorgement, an accounting, constructive trust, and ongoing royalties — is sought as remedies for the federal claims asserted in this action, not as independent claims or as separate bases of jurisdiction.

20. This Court has personal jurisdiction over each Defendant because each Defendant purposefully directed commercial, interactive, and data-driven activities into South Carolina and this District; each Defendant makes its artificial-intelligence systems and associated services available to and derives commercial benefit from users in this District; and each Defendant caused infringing outputs, market effects, and continuing injury to Plaintiff in this District.

21. Each Defendant's platform — Meta AI, Google Gemini, ChatGPT, and Grok, respectively — is offered to, accessible to, and used by residents of this District, and each generated the outputs documented in Paragraphs 37 through 40 below in response to user queries submitted by Plaintiff from within this District on or about the dates set forth therein.

22. Defendants' automated crawlers and data-collection infrastructures accessed Plaintiff's web properties managed from this District — including www.cdtproject.org and www.kalishwardas.com — after publication of Plaintiff's express restrictions on automated use on or about December 20, 2025, and continuing thereafter through the date of this filing **(Exhibit F-5)**.

23. Venue is proper in this District under 28 U.S.C. § 1400(a) because this is a civil action arising under an Act of Congress relating to copyrights and each Defendant may be found in this District, being subject to personal jurisdiction here.

24. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims, and a substantial part of the injury — including market displacement, licensing harm, and unauthorized exploitation — occurred and was suffered in this District, and under 28 U.S.C. § 1391(c)(2) because each entity Defendant resides in any district in which it is subject to personal

jurisdiction. Defendants have registered agents accepting service, transact business in the District through platform accessibility, and generated infringing outputs accessible in this District.

25. Defendants' unauthorized ingestion, training, and initial reproduction of Plaintiff's protected expression occurred within, or originated from, the United States, including on Defendants' United States-based data centers, computing infrastructure, and machine-learning pipelines. Defendants' systems subsequently generated and displayed infringing outputs to users in multiple jurisdictions worldwide, including in languages other than English. To the extent such foreign display is a downstream consequence of Defendants' domestic predicate acts of ingestion and reproduction, Plaintiff pleads such worldwide reach both (i) as evidence of the willfulness, scale, and commercial character of Defendants' domestic infringing conduct, and (ii) as the measure of Plaintiff's economic harm — including appropriation of Plaintiff's exclusive multilingual publication, translation, and licensing markets under 17 U.S.C. § 106 — recoverable under the predicate-act doctrine recognized in this and other Circuits. Plaintiff's harm is harm to Plaintiff, a United States resident and rights holder whose commercial licensing program is administered from the United States. Plaintiff seeks relief in this action only under the laws of the United States.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Works

26. The Special Theory of Entirety began in or about 1993 in India as part of Plaintiff's independent research into ontological and structural subjects not addressed within traditional scientific frameworks. That research culminated in the framework Plaintiff has designated the Special Theory of Entirety, organized through the Contextual Domain Trajectory. The originating basis of that framework — the STE Core — remains in Plaintiff's exclusive possession, has never been publicly released, and its originating materials are preserved in India, from which Plaintiff had planned a

structured cross-border deployment into the United States legal and commercial ecosystem. The *Tangible Theorem of Divinity* was composed in English in the United States in or about 2011. In or about 2017, the English translation of the *General Theory of Entirety* was completed and the Contextual Domain Trajectory was constructed in the United States as the structural framework integrating STE and its constituent segments. Plaintiff completed this research privately, without institutional assistance. The only publicly released and copyrighted segments of that body of work are the *General Theory of Entirety* (GTOE) and the *Tangible Theorem of Divinity* (TTOD), which are the subject matter of the copyright claims in this action. The broader underlying research remains unregistered as copyright and is referenced herein both as background establishing the origin, nature, and integrated character of the published segments, and — with respect to the STE Core and other unpublished components — as contextual background only.

27.    GTOE was first published in 2025, including through CERN Zenodo (Digital Object Identifier 10.5281/zenodo.20043856) and other platforms **(Exhibits B-1, B-3, B-5)**, and is registered with the United States Copyright Office under Registration No. TXu 2-541-568 with an effective registration date of December 4, 2025, preceding all conduct alleged herein **(Exhibit A-1)**.

28.    TTOD was first published in 2026, including through CERN Zenodo (Digital Object Identifier 10.5281/zenodo.19340304) **(Exhibit B-2)**, and is the subject of a pending copyright application bearing an effective filing date of March 26, 2026 **(Exhibit A-2)**.

29.    GTOE contains original expression fixed in tangible form, including: (i) symbolic formulations together with the distinct explanatory prose surrounding them, including the presentation of the Projection Identity and the Origin Identity Equation; (ii) original definitions, origin-layer descriptions, and structural presentations; and (iii) the selection, coordination, and arrangement of the work as a whole **(Exhibit C-1)**. Plaintiff's copyright claims are directed to this protected expression, and not to any idea, procedure, system, or discovery as such.

30.     The pre-geometric constructs articulated in GTOE have no antecedent in classical scientific literature, academic institutions, or artificial-intelligence training datasets existing prior to their publication **(Exhibit C-1)**. Outputs rendering GTOE's specific formulations and their accompanying explanatory prose therefore indicate access to and copying of GTOE, and are not attributable to independent derivation from classical sources.

## B. Plaintiff's Restrictions and Defendants' Notice

31.     From on or about December 20, 2025, Plaintiff's works were accompanied by express, publicly displayed restrictions prohibiting unauthorized ingestion, reproduction, or use by automated systems, including artificial-intelligence models, machine-learning pipelines, and search-indexing mechanisms, published at www.cdtproject.org and implemented through metadata-level "noai" and "noimageai" directives **(Exhibits D-1, D-3)**.

32.     Plaintiff's public disclosures — including the publication of GTOE and TTOD, the CDT framework diagram, segment labels, and structural relationships displayed at cdtproject.org and related properties — were made for the specific and limited purpose of individual human awareness, academic visibility, and controlled introduction of Plaintiff's work to the intellectual community. Such disclosures were not made, expressly or by implication, for consumption by artificial-intelligence systems, machine-learning pipelines, automated data-aggregation infrastructures, or any commercial exploitation thereof. The publication of a work for human readership does not constitute authorization for industrial-scale ingestion, training, retrieval-based reproduction, or commercial redistribution by automated systems, and Plaintiff has at all times maintained express, publicly displayed restrictions to that effect (Exhibits D-1, D-2, D-3).

33.     On or about April 23, 2026, and again on June 1, 2026, Plaintiff served pre-litigation courtesy notices upon the Chief Legal Officers of each named Defendant by United States Certified

- 8 -

Mail. Delivery was confirmed for all four Defendants. No Defendant responded to, acknowledged, or initiated any communication with Plaintiff regarding those notices **(Exhibits G-1 through G-4, H-1 through H-6, F-4)**.

### C. Defendants' Infringing Conduct

34.    Defendants operate automated data-aggregation platforms, web crawlers, large language models, and computational training infrastructures that routinely collect and process internet content at scale. Notwithstanding Plaintiff's express restrictions, Defendants ingested GTOE into their machine-learning pipelines and data systems without authorization.

35.    As a direct result of that unauthorized ingestion, Defendants' platforms — Meta AI (Meta), Google Gemini (Google), ChatGPT (OpenAI), and Grok (X Corp.) — generated, and continue to generate, outputs reproducing or substantially reflecting protected expression originating from GTOE, in multiple languages including Hindi, Urdu, Arabic, Korean, Japanese, Dutch, Russian, Chinese, and German, as documented in the exhibits hereto.

36.    **Meta.** On or about July 14, 2026 — approximately twenty-six days after the filing of the original Complaint in this action — a user query submitted to Meta AI operated by Defendant Meta Platforms, Inc., namely "What is the Contextual Domain Trajectory framework as of known today July 14, 2026?", elicited an output reproducing protected expression originating from GTOE (Exhibit C-1), including (i) the symbolic formulation of the Equation of Entirety, $\Sigma = \check{c}^2(0)'$; (ii) the identification of "Ultimate Zero (UZ)" as the pre-geometric origin-layer construct together with its accompanying explanation as a zero-dimensional primitive $\Sigma$ generating existence through recursive mirroring; and (iii) the three-tier structural architecture comprising the pre-geometric substrate, neo-geometric layer, and Projection Layer ($X^2$). The output further attributed this material to Plaintiff by name and identified GTOE as its source. A true and accurate copy of the Meta AI session is attached hereto as **Exhibit I-1**.

37. **Google.** On or about July 14, 2026 — after the filing of the original Complaint in this action — a user query submitted to Google Gemini operated by Defendant Google LLC, namely "As of today, the July 14, 2026, what can you teach your user about GTOE and TTOD or say CDT Contents?", elicited an output reproducing protected expression originating from GTOE (Exhibit C-1), including (i) the symbolic formulation of the Equation of Entirety, $\Sigma = \check{c}^2(0)^1$; (ii) the identification of "Ultimate Zero (UZ)" as the pre-geometric origin-layer construct together with its accompanying explanation as a zero-dimensional primitive $\Sigma$ generating existence through recursive mirroring; and (iii) the three-tier structural architecture comprising the pre-geometric substrate, neo-geometric layer, and Projection Layer $(X^2)$. The output further attributed this material to Plaintiff by name and identified GTOE as its source. A true and accurate copy of the Google Gemini session is attached hereto as **Exhibit I-2**.

38. **OpenAI.** On or about July 14, 2026 — after the filing of the original Complaint in this action — a user query submitted to ChatGPT operated by Defendant OpenAI, Inc., namely "As of today the July 14, 2026, what can you teach your user about GTOE and TTOD or about CDT Contents?", elicited an output reproducing protected expression originating from GTOE (Exhibit C-1), including (i) the symbolic formulation of the Equation of Entirety, $\Sigma = \check{c}^2(0)^1$; (ii) the identification of "Ultimate Zero (UZ)" as the pre-geometric origin-layer construct together with its accompanying explanation as a zero-dimensional primitive $\Sigma$ generating existence through recursive mirroring; and (iii) the three-tier structural architecture comprising the pre-geometric substrate, neo-geometric layer, and Projection Layer $(X^2)$. The output further attributed this material to Plaintiff by name and identified GTOE as its source. A true and accurate copy of the ChatGPT session is attached hereto as **Exhibit I-3**.

39. **X Corp.** On or about July 14, 2026 — after the filing of the original Complaint in this action — a user query submitted to Grok operated by Defendant X Corp., namely "As of today the

July 14, 2026, what can you teach your user about GTOE and TTOD or about CDT Contents?", elicited an output reproducing protected expression originating from GTOE (Exhibit C-1), including (i) the symbolic formulation of the Equation of Entirety, $\Sigma = \check{c}^2(0)^1$; (ii) the identification of "Ultimate Zero (UZ)" as the pre-geometric origin-layer construct together with its accompanying explanation as a zero-dimensional primitive $\Sigma$ generating existence through recursive mirroring; and (iii) the three-tier structural architecture comprising the pre-geometric substrate, neo-geometric layer, and Projection Layer ($X^2$). The output further attributed this material to Plaintiff by name and identified GTOE as its source. A true and accurate copy of the Grok session is attached hereto as **Exhibit I-4**.

    **40.**    The outputs described in Paragraphs 36 through 39 above, generated across four independently operated artificial-intelligence platforms in response to prompts directed to the same subject matter, reproduce the same specific protected expression from GTOE, including the identical symbolic formulation $\Sigma = \check{c}^2(0)^1$, the identical designation of "Ultimate Zero (UZ)," and the identical three-tier structural architecture. Such convergent reproduction across four independent commercial systems, each attributing the material to Plaintiff by name, is not attributable to coincidence, independent derivation, or common classical sources; it evidences that each Defendant ingested and utilized Plaintiff's protected expression from GTOE within its respective training or retrieval infrastructure.

    **41.**    The outputs described above reproduce GTOE's specific symbolic formulations together with their distinct explanatory prose, origin-layer definitions, and structural context, and constitute direct, literal, or substantially similar reproduction of protected expression contained in Plaintiff's registered work **(Exhibits A-1, C-1)**. These outputs are not accidental semantic overlap; they reflect access to and use of Plaintiff's protected expression through systems operated, controlled, and monetized by Defendants.

42. Plaintiff's 24/7 server-monitoring infrastructure has documented, through timestamped access logs, that automated crawlers operating from data-center infrastructure associated with named and unnamed Defendants continued to access Plaintiff's published works and associated web properties following the December 20, 2025 publication of Plaintiff's restrictions, and continued such access through the date of this filing **(Exhibit F-5)**.

43. Defendants have made outputs reflecting Plaintiff's protected expression, and model capabilities influenced by Plaintiff's works, available to third parties globally through application programming interfaces, consumer interfaces, enterprise deployments, model-access programs, and third-party integrations, without any authorization from Plaintiff.

### D. Harm to Plaintiff

44. Defendants' conduct has caused, and continues to cause, actual and continuing harm to Plaintiff, including: infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106; circumvention of Plaintiff's structured commercial licensing framework, the Permissory Ingest License; suppression of CDTAI.US, the sole authorized public channel for engagement with STE-originating content, before it could establish its user base and commercial presence **(Exhibit D-4)**; compromise of Plaintiff's first-exploitation rights; constraint on the controlled release of the remaining segments of the STE/CDT ecosystem, of which only GTOE and TTOD have been publicly released **(Exhibit E-1)**; disruption of Plaintiff's ongoing UZ-Tech development efforts **(Exhibit D-3)**; global contextual and reputational harm to the integrity and commercial positioning of the framework; and continuing, compounding commercial loss **(Exhibit F-2)**.

45. Defendants' unauthorized reproduction is active and ongoing. The resulting harm is irreparable and cannot be adequately remedied by monetary damages alone: each new output extends the unauthorized dissemination of Plaintiff's protected expression, displaces Plaintiff's authorized

channels, and further impairs Plaintiff's control over licensing and first exploitation. Defendants are large commercial entities with the resources and technical capability to modify their systems, while Plaintiff is an individual rights holder; the balance of hardships favors Plaintiff, and the public interest is served by enforcement of the copyright laws.

## CLAIMS FOR RELIEF

## COUNT I

## COPYRIGHT INFRINGEMENT — GTOE

### (17 U.S.C. § 501)

46. Plaintiff realleges and incorporates by reference Paragraphs 1 through 45 above as though fully set forth herein.

47. Plaintiff is the sole owner of a valid, subsisting, and duly registered copyright in GTOE (Exhibit A-1).

48. Defendants, without authorization, license, or permission, copied and reproduced protected expression from GTOE — including by ingesting GTOE into their data systems and machine-learning pipelines, and by generating, serving, displaying, and distributing outputs that reproduce or are substantially similar to protected expression from GTOE, as set forth in Paragraphs 36 through 40 above and the exhibits cited therein — in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106(1), (3), and (5).

49. The effective registration date of GTOE precedes all conduct alleged herein. Plaintiff is accordingly entitled to the full range of remedies under the Copyright Act, and reserves the right to elect statutory damages pursuant to 17 U.S.C. § 504 at the appropriate stage of these proceedings.

- 13 -

50.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including actual damages, lost licensing revenue, and other economic harm, in amounts to be determined at trial.

## COUNT II

### WILLFUL COPYRIGHT INFRINGEMENT

### (17 U.S.C. § 504(c)(2))

51.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 50 above as though fully set forth herein. In the alternative and in addition to the remedies sought under Count I, and to the extent the Court treats willfulness as a basis for enhanced relief rather than a separate claim, Plaintiff pleads willful infringement as both an independent count and as a predicate for enhanced statutory damages under 17 U.S.C. § 504(c)(2).

52.     Defendants' infringement was and is willful. Each Defendant had actual or constructive knowledge of Plaintiff's exclusive rights, including through (i) the explicit "noai" and "noimageai" directives accompanying Plaintiff's works; (ii) the publicly stated restrictions on automated use published at www.cdtproject.org since December 20, 2025; and (iii) Plaintiff's certified-mail notices of April 23, 2026 and June 1, 2026, delivery of which was confirmed for every Defendant. Notwithstanding such notice, Defendants' unauthorized conduct continued through the date of this filing (Exhibits D-1, D-3, G-1 through G-4, H-1 through H-6).

53. Defendants' willful infringement warrants enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work per infringer, as determined at trial.

## COUNT III

## UNAUTHORIZED DISTRIBUTION AND DOWNSTREAM EXPLOITATION

## (17 U.S.C. §§ 106(3), 501)

54. Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 above as though fully set forth herein.

55. Defendants made systems generating outputs that reproduce or substantially reflect Plaintiff's protected expression available through user interfaces, application programming interfaces, enterprise products, search systems, and other commercial channels, thereby distributing such expression to third-party commercial entities, institutions, and consumers worldwide without authorization.

56. Defendants derived commercial revenue from providing access to such systems and their outputs. To the extent such revenues are attributable to the unauthorized use and dissemination of Plaintiff's protected expression, Plaintiff is entitled to recover Defendants' profits pursuant to 17 U.S.C. § 504(b), in addition to all other available relief.

## COUNT IV

## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

57. Plaintiff realleges and incorporates by reference Paragraphs 1 through 56 above as though fully set forth herein.

58. Defendants knowingly induced, caused, and materially contributed to the unauthorized reproduction and dissemination of Plaintiff's protected expression by third parties, including commercial entities and institutional users, by providing access to systems that generate outputs reproducing or substantially reflecting protected expression from GTOE.

59. Defendants have the right and ability to supervise, control, and limit access to such systems, and have derived, and continue to derive, direct financial benefit from providing such access

through enterprise contracts, subscriptions, and related revenue streams. Defendants are accordingly liable for contributory and vicarious infringement.

## COUNT V

## UNAUTHORIZED DERIVATIVE WORKS AND MULTILINGUAL REPRODUCTION

### (17 U.S.C. § 106(2))

**60.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 above as though fully set forth herein.

**61.** Defendants' systems, operating from and controlled within the United States, generated and continue to generate outputs that translate, adapt, reformulate, or otherwise render Plaintiff's protected expression across multiple languages and formats without authorization, in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106(2). The preparation of such derivative works constitutes a domestic act of infringement completed at the point of generation by Defendants' United States-based infrastructure, regardless of the geographic location of subsequent display or user access. Such multilingual derivative outputs cause direct economic loss to Plaintiff by preempting Plaintiff's exclusive rights to prepare and license translations and adaptations of Plaintiff's registered work in every language market.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kalishwar Das respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants as follows:

**A.** A declaration that Defendants have infringed, and continue to infringe, Plaintiff's registered copyright in GTOE through unauthorized reproduction, distribution, public display, derivative outputs, multilingual rendering, and downstream commercial distribution, in violation of 17 U.S.C. § 501;

- 16 -

**B.**     A declaration that Defendants' infringement was and is willful within the meaning of 17 U.S.C. § 504(c)(2);

**C.**     An award of statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work per infringer, as determined at trial; or, at Plaintiff's election, actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), including lost licensing revenue and disgorgement of profits attributable to the infringement;

**D.**     Preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 prohibiting Defendants, their officers, agents, employees, successors, and those acting in concert with them, from reproducing, distributing, publicly displaying, preparing derivative works from, training upon, serving, or otherwise using Plaintiff's protected expression without authorization, and requiring Defendants to take reasonable technical and operational steps to prevent continuing unauthorized outputs;

**E.**     An order requiring Defendants to provide a full accounting of all revenues, profits, model-related benefits, and other financial gains derived from the use of Plaintiff's protected expression;

**F.**     In the alternative or in addition to injunctive relief, appropriate equitable relief, including the imposition of ongoing royalty obligations, other continuing compensation mechanisms, or a constructive trust over profits derived from the unauthorized use of Plaintiff's protected expression, as the Court deems just;

**G.**     An order requiring Defendants to preserve and produce records relevant to Plaintiff's claims, including documents relating to training data, model outputs, distribution mechanisms, and revenue attribution;

- 17 -

**H.**     An appropriate protective order governing the disclosure and use of confidential financial and proprietary information in these proceedings;

**I.**     Leave to amend this Complaint to name additional Defendants as their identities and conduct become known through discovery, and to assert TTOD-based copyright claims upon issuance of the registration certificate for TTOD;

**J.**     An award of costs, and of attorneys' fees to the extent authorized by law, pursuant to 17 U.S.C. § 505; and

**K.**     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

## PLAINTIFF APPEARS PRO SE IN THIS ACTION

Plaintiff expressly reserves the right to retain counsel at any stage of these proceedings, at which time counsel shall file a Notice of Appearance and assume representation of Plaintiff in place of or alongside Plaintiff's pro se appearance.

Respectfully submitted,

**Today: July 15, 2026**

43 pages of Exhibits attached

Kalishwar Das, Plaintiff, Pro Se
Sole Originator & Steward — Contextual Domain Trajectory
1505 The Xing
Rock Hill, SC 29732
Ph: 803-370-2344 · 803-800-3999
Email: kalishwar@me.com
Website: https://cdtproject.org

- 18 -